IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| THE STATE OF TEXAS, and | ) | |
| THE STATE OF OKLAHOMA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No._____ |
| | ) | |
| MAHARD EGG FARM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

1.     The United States of America, through its undersigned attorneys, acting at the request of

the Administrator of the Environmental Protection Agency ("EPA"); the State of Texas,

by and through the Attorney General of Texas, on behalf of the Texas Commission on

Environmental Quality ("TCEQ"); and the State of Oklahoma, by and through Attorney

General, Scott Pruitt, and the Oklahoma Department of Agriculture, Food and Forestry

("ODAFF") and by and through their undersigned counsel, file this Complaint and allege

as follows:

**I.  NATURE OF ACTION**

2.     This is a civil action for injunctive relief and civil penalties against Defendant Mahard

Egg Farm, Inc. ("Mahard" or "Defendant"), brought pursuant to Sections 309(b) and (d)

of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1319(b) and (d), for the

discharge of pollutants from Concentrated Animal Feeding Operations ("CAFOs")

without a permit in violation of CWA Section 301, 33 U.S.C. § 1311; for failure to

comply with the conditions of permits (including various state general permits) issued pursuant to CWA Section 402, 33 U.S.C. § 1342; and for the discharge of pollutants from CAFOs in violation of CWA Section 301, 33 U.S.C. § 1311.

3.      This action is also brought pursuant to Chapters 7 and 26 of the Texas Water Code ("Tex. Water Code"), §§ 7.001-7.358 and 26.001-26.562 (Vernon 2008); and Chapters 341 and 361 of the Texas Health and Safety Code ("Tex. Health & Safety Code") §§ 341.001-341.092 and 361.001-361.966 (Vernon 2010); and Title 2 Oklahoma Statutes. § 2-18.1, Title 2 O.S. § 20-41 et. seq. (Oklahoma Concentrated Animal Feeding Operations Act), and Oklahoma Administrative Code §§ Title 35:17-4-1 et. seq. (Oklahoma Concentrated Animal Feeding Operations Permanent Rules), Title 2 O.S. §§ 10-9.16 et. seq. (Oklahoma Poultry Waste Applicators Certification Act), and OAC §§ 35:17-7-1 et. seq. (Oklahoma Poultry Waste Applicators Permanent Rules), against Defendant for similar violations of State Plaintiffs' state laws.

4.      The CAFO facilities at issue are egg production facilities owned or operated by the Defendant and known as the Prosper Facility in Denton County, Texas; the Vernon-Chillicothe Facility, in Wilbarger and Hardeman Counties, Texas; and the Springhill Facility in Denton County, Texas ("the Texas Facilities"); the Nebo Ranch Facility in Murray County, Oklahoma; the Ravia Facility in Johnston County, Oklahoma; the Granite Ranch Facility in Johnston County, Oklahoma; and the Boogie Hill Facility in Murray County, Oklahoma ("the Oklahoma Facilities").

## II.  JURISDICTION, VENUE AND NOTICE

5.      Venue is proper in this District pursuant to 33 U.S.C. § 1319(b); 28 U.S.C. §§ 1391(b)

2

and 1395(a), because it is a judicial district in which the Defendant is doing business and in which certain of the alleged violations occurred.

6.     This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355.  This Court has jurisdiction over the State Plaintiffs' claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

7.     Notice of the commencement of this action has been provided to the States of Texas and Oklahoma pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

### III.  THE DEFENDANT

8.     Defendant Mahard Egg Farm, Inc., is a corporation under the laws of Texas, and a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5); Tex. Water Code § 26.001(25); Tex. Health & Safety Code §§ 341.001(5) and 361.003(23); and Title 2 Oklahoma Statutes § 1-3 (9).

### IV.  STATUTORY AND REGULATORY BACKGROUND

**A.**    **Federal Clean Water Act Requirements and Authorities**

9.     This action arises under the federal Clean Water Act, 33 U.S.C. §§ 1311-1387, as amended, and the regulations promulgated thereunder, as well as the federally enforceable provisions of the Tex. Water Code, Sections 7.001-7.358 and 26.001-26.562 (Vernon 2008), as amended, and the regulations promulgated thereunder, that are aimed at protecting water quality by controlling the discharge of pollutants to waters of the United States and/or waters of the State.

10.    The CWA is designed to restore and maintain the chemical, physical and biological

integrity of the nation's waters.  Section 101 of the CWA, 33 U.S.C. § 1251(a).

11.     To accomplish the objectives of the CWA, Section 301(a) of the CWA, 33 U.S.C.

        § 1311(a), prohibits the "discharge of any pollutant" by any person except in certain

        circumstances, including in compliance with a National Pollutant Discharge Elimination

        System ("NPDES") permit issued by EPA pursuant to Section 402 of the CWA, 33

        U.S.C. § 1342.

12.     Pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, EPA established an NPDES

        permit program to control discharges of pollutants (other than dredged or fill material)

        from point sources into waters of the United States.  *See* 40 C.F.R. Part 122.  In

        accordance with this section, NPDES authorization is required from the U.S. EPA, or a

        state authorized to administer the NPDES program, for any discharge of such pollutants

        from point sources into waters of the United States.  40 C.F.R. § 122.1.

13.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of a

        pollutant" as, *inter alia*, "any addition of any pollutant to navigable waters from any

        point source."

14.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter*

        *alia*, "biological materials . . . and agricultural waste discharged into water."

15.     CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of

        the United States, including the territorial seas."

16.     40 C.F.R. § 122.2 defines "Waters of the United States" to include "all waters which are

        currently used, were used in the past, or may be susceptible to use in interstate or foreign

        commerce . . ." tributaries to such waters, and wetlands adjacent to the foregoing.

4

17. <u>CAFO Permit Requirement</u>.  According to Section 502(14) of the CWA, 33 U.S.C.
§ 1362(14), a "point source" includes "any discernible, confined and discrete
conveyance, including but not limited to any … concentrated animal feeding
operation … from which pollutants are or may be discharged."

18. <u>Construction Storm Water Permit Requirement</u>.  Section 402(p) of the CWA, 33 U.S.C.
§ 1342(p), requires a permit for storm water discharges associated with industrial
activity.  EPA regulations define the term "storm water discharge associated with
industrial activity" to include storm water discharges from construction activities,
including clearing, grading and excavation activities, that result in a disturbance of five
or more acres of total land area.  40 C.F.R. § 122.26(b)(14)(x).

19. Pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b), each state may administer
its own NPDES permit program under state law if the state program has been approved
by the Administrator of EPA.

20. Texas is so authorized and issued its own NPDES general permits governing both
discharges of storm water associated with construction activities (*see* TPDES General
Permit No. TXR150000, issued Feb. 15, 2008, hereinafter "TXCGP") and discharges
from concentrated animal feeding operations (*see* TPDES General Permit No.
TXG920000, issued July 9, 2009, hereinafter "Texas General CAFO Permit").

21. The United States may enforce the state-issued NPDES permits under the CWA.  Section
309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the commencement of a civil action
for appropriate relief, including a permanent or temporary injunction, against any person
who violates CWA Section 301(a), 33 U.S.C. § 1311(a), or any condition or limitation

5

imposed in a NPDES permit issued under CWA Section 402, 33 U.S.C. § 1342.

22.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA Section 301(a), 33 U.S.C. § 1311(a), or any condition or limitation imposed in a NPDES permit issued under CWA Section 402, 33 U.S.C. § 1342.

23.     Pursuant to Section 309(d) of the Act, 33 U.S.C. § 1319(d), the maximum civil penalty for violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) is $32,500 per day for each violation of the CWA occurring after March 15, 2004 through January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009.  *See* 69 Fed. Reg. 7121  (Feb. 13, 2004); 73 Fed. Reg. 75340  (Dec. 11, 2008).

**B.      CAFO NPDES Permit Requirements in Texas**

24.     In 1998, the State of Texas adopted its own CAFO NPDES permit program pursuant to Tex. Water Code §§ 5.102, 5.103, 26.027, 26.040, 26.121 and other authorities.  *See* 23 Tex. Reg. 9354 (Sept. 11, 1998) (codified at 30 Tex. Admin. Code §§ 321.31-321.46) (eff. Sept. 18, 1998), which was approved by EPA.  *See* 63 Fed. Reg. 51,164 (Sept. 24, 1998).

25.     Effective July 27, 1999, the State of Texas required existing CAFOs, which were authorized by EPA under federal law prior to July 27, 1999, to apply within 60 days for authorization to discharge under the newly promulgated state NPDES regulations. 30 Tex. Admin. Code § 321.33, 24 Tex. Reg. 5721 (July 23, 1999).

26.     Pursuant to 30 Tex. Admin. Code § 321.33(a), all CAFOs must "seek and obtain authorization under a water quality general permit or individual permit."

27.     The State of Texas has renewed and amended the General CAFO NPDES Permit several

        times since 1999, most recently on July 9, 2009, when it issued General Permit No.

        TXG920000.

28.     When a State is authorized to administer an NPDES permit program pursuant to Section

        402(b) of the CWA, 33 U.S.C. § 1342(b), the Administrator retains the authority,

        concurrent with the authorized state, to enforce state-issued permits and to take

        enforcement action under Section 309(a) and (b) of the CWA, 33 U.S.C. § 1319(a), (b);

        33 U.S.C. § 1342(i).

**C.      Construction Storm Water NPDES Permit Requirements in Texas**

29.     Pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b), states may also issue their

        own NPDES permits for storm water discharges from construction activities.  Texas is so

        authorized and has issued its own NPDES general permits governing discharges of storm

        water.  *See* TPDES General Permit No. TXR150000 (hereinafter referred to as the

        "TXCGP").

30.     Under the TXCGP, any person subject to the permit is required to develop a storm water

        pollution prevention plan or a sedimentation control plan (collectively, hereafter, referred

        to as "SWP3"), which sets forth a plan to control and reduce pollutants in storm water

        discharges from construction activities.  *See* TXCGP, Part III.

31.     A central requirement of the TXCGP is the selection of best management practices

        ("BMPs").  BMPs are management practices designed to minimize the impact of

        construction activities, such as erosion, sediment, and dust controls and both initial and

        final stabilization practices.  *See* TXCGP Part III (F)(2).

7

**D.**     **CAFO NPDES Permit Requirements in Oklahoma**

32.     In 1993, EPA's Region 6 issued the "NPDES General Permit for Discharges From Concentrated Animal Feeding Operations" (herein after the "EPA CAFO General Permit"), which was applicable to all CAFOs located in Region 6, including the State of Oklahoma.

33.     The EPA CAFO General Permit became effective on March 10, 1993 and continues in force at all CAFOs located in Oklahoma today.

**E.**     **Texas CAFO Requirements and Authorities**

34.     Chapter 26 of the Texas Water Code is designed, *inter alia,* to "maintain the quality of water in the state consistent with the public health and enjoyment. . . ." Tex. Water Code § 26.003.

35.     Texas law prohibits any person from discharging any "agricultural waste or industrial waste from any point source into any water in the state," except as authorized by the TCEQ. Tex. Water Code § 26.121(d).  In addition, "No person may cause, suffer, allow, or permit the discharge from a point source of any waste or of any pollutant, or the performance or failure of any activity other than a discharge, in violation of [Chapter 26 of the Texas Water Code] or of any rule, regulation, permit, or other order of the [TCEQ]." *Id.* § 26.121(e).

36.     "Agricultural waste" means "waterborne liquid, gaseous, or solid substances that arise from the agricultural industry and agricultural activities, including without limitation agricultural animal feeding pens and lots, structures for housing and feeding agricultural animals, and processing facilities for agricultural products." Tex. Water Code

§ 26.001(10).

37.     "Point source" includes any "concentrated animal feeding operation … from which
        pollutants or wastes are or may be discharged into or adjacent to any water in the state."
        Tex. Water Code § 26.001(21).

38.     "To discharge" includes "to deposit, conduct, drain, emit, throw, run, allow to seep, or
        otherwise release or dispose of, or to allow, permit, or suffer any of these acts or
        omissions." Tex. Water Code § 26.001(20).

39.     "Pollutant" includes "agricultural waste discharged into any water in the state." Tex.
        Water Code § 26.001(13).

40.     "Water" or "water in the state" is defined broadly to include "groundwater, percolating or
        otherwise, lakes, bays, ponds, impounding reservoirs, springs, rivers, streams, creeks,
        estuaries, wetlands, marshes, inlets, canals, the Gulf of Mexico, inside the territorial
        limits of the state, and all other bodies of surface water, natural or artificial, inland or
        coastal, fresh or salt, navigable or nonnavigable, and including the beds and banks of all
        watercourses and bodies of surface water, that are wholly or partially inside or bordering
        the state or inside the jurisdiction of the state." Tex. Water Code § 26.001(5).

41.     A person may not "cause, suffer, allow, or permit a violation of a statute within the
        [TCEQ's] jurisdiction or a rule adopted or an order or permit issued under such a
        statute."  Tex. Water Code § 7.101.  Upon the TCEQ's request, the Attorney General of
        Texas "shall institute a suit in the name of the state for injunctive relief …, to recover a
        civil penalty, or for both injunctive relief and a civil penalty." Tex. Water Code
        § 7.105(a).

9

42.     The civil penalty for violations of Chapter 26 of the Texas Water Code, or a "rule, order, or permit" under that chapter, is "not less than $50 nor greater than $25,000 for each day of each violation as the court or jury considers proper." Tex. Water Code § 7.102.  "Each day of a continuing violation is a separate violation."  *Id.*

43.     The State of Texas is entitled to recover "reasonable attorney's fees, court costs, and reasonable investigative costs" it incurs in this proceeding. Tex. Water Code § 7.108.

**F.      Texas Public Water Supply Requirements and Authorities**

44.     Chapter 341 of the Texas Health and Safety Code requires the TCEQ to "ensure that public drinking water systems: (1) supply safe drinking water in adequate quantities; (2) are financially stable; and (3) are technically sound."  Tex. Health & Safety Code § 341.0315(a).

45.     "Public water system" means "a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, which includes all uses described under the definition for drinking water.  Such a system must have at least 15 service connections or serve at least 25 individuals at least 60 days out of the year . . . ."  30 Tex. Admin. Code § 290.38(66).

46.     "Drinking water" means "all water distributed by any agency or individual, public or private, for the purpose of human consumption. . . ." 30 Tex. Admin. Code § 290.38(22).

47.     A person who violates Chapter 341, Subchapter C of the Texas Health and Safety Code, or a rule or order adopted under the subchapter, is liable for a penalty of not less than $50 nor more than $1,000 for each violation, and each day of a continuing violation is a separate violation.  Tex. Health & Safety Code § 341.048(b).

**G.**     <u>**Texas Solid Waste Disposal Act Requirements and Authorities**</u>

48.     The Solid Waste Disposal Act, Chapter 361 of the Texas Health and Safety Code, confers

jurisdiction on the TCEQ to adopt rules regulating the storage, processing, and disposal

of solid wastes.  Tex. Health & Safety Code §§ 361.011 and 361.119.

49.     "A person may not cause, suffer, allow, or permit a violation of a statute within the

[TCEQ's] jurisdiction or a rule adopted or an order or permit issued under such a

statute."  Tex. Water Code § 7.101.

50.     A person who causes, suffers, allows, or permits a violation of a statute, rule, order, or

permit relating to Chapter 361 of the Texas Health and Safety Code "shall be assessed for

each violation a civil penalty not less than $50 nor greater than $25,000 for each day of

each violation. . . " and each day of a continuing violation is a separate violation.  Tex.

Water Code § 7.102.

51.     "[N]o person may cause, suffer, allow, or permit any activity of storage, processing,

removal, or disposal of any solid waste unless such activity is authorized by a permit or

other authorization from the TCEQ."  30 Tex. Admin. Code § 330.7(a).

52.     "Composting" means "the controlled biological decomposition of organic solid waste

under aerobic conditions."  Tex. Health & Safety Code 361.003(6).

53.     "[O]perations that compost any source-separate meat, fish, dead animal carcasses, oils,

greases, or dairy materials" are required to meet all requirements set forth in Tex. Admin.

Code ch. 332, subch. B, relating to notification requirements, the general requirements

found in Section 332.4 of that title, and the air quality requirements found in Section

332.8 of that title. 30 Tex. Admin. Code § 332.3(c).

**H.**   **Oklahoma Requirements and Authorities**

54.   Title 2 O.S. § 2-18.1(A) provides that it shall be unlawful and a violation of the

Oklahoma Agricultural Code for any person to cause pollution of any air, land or waters

of the state by persons which are subject to the jurisdiction of the Oklahoma Department

of Agriculture, Food, and Forestry pursuant to the Oklahoma Environmental Quality Act.

55.   Pursuant to Title 2 O.S. § 1-3 (9), "person" means the state, any municipality, political

subdivision, institution, individual, public or private corporation, partnership, association,

firm, company, public trust, joint-stock company, trust, estate, state or federal agency,

other governmental entity, or any other legal entity or an agent, employee, representative,

assignee or successor thereof.

56.   Title 2 O.S.§ 20-41(B)(4) defines "animal waste" to mean "animal excrement, animal

carcasses, feed wastes, process wastewaters or any other waste associated with the

confinement of animals from an animal feeding operation.

57.   Pursuant to Title 2 O.S. § 20-41(B)(16), "land application" means the spreading on, or

incorporation of, animal waste into the soil mantle primarily for beneficial purposes.

58.   Pursuant to Title 2 O.S. § 20-41(B)(21), "Pollution Prevention Plan" means a written

plan to control the discharge of pollutants which has been prepared in accordance with

industry-acceptable engineering and management practices by the owner or operator of

an animal feeding operation as required pursuant to Section 20-47 of the Oklahoma

Concentrated Animal Feedings Operations Act.

59.   Pursuant to Title 2 O.S. § 20-41(B)(22), "process wastewater" means any water utilized

in the facility that comes into contact with any manure, litter, bedding, raw, intermediate,

or final material or product used in or resulting from the production of animals and any products directly or indirectly used in the operation of a facility, such as spillage or overflow from animal watering systems; washing, cleaning, or flushing pens, barns, manure pits, direct contact, swimming, washing or spray cooling of animals; and dust control and any precipitation which comes into contact with animals or animal waste.

60.     Pursuant to Title 2 O.S. § 20-41(B)(23), "retention structures" includes but is not limited to all collection ditches, conduits and swales for the collection of runoff water and process wastewater, and basins, ponds and lagoons or other structures used to store animal wastes;

61.     Pursuant to Title 2 O.S. § 20-41(B)(24), "waste facility" means any structure or combination of structures utilized to control animal waste until it can be disposed of in an authorized manner. The structures shall include but not be limited to pits, burial sites, barns or roof-covered structures housing animals, composters, waste storage sites, or retention structures or appurtenances or additions thereto; and

62.     Pursuant to Title 2 O.S. § 20-41(B)(25), "waters of the state" means all streams, lakes, ponds, marshes, watercourses, waterways, wells, springs, irrigation systems, drainage systems, storm sewers and all other bodies or accumulations of water, surface and underground, natural or artificial, public or private, which are contained within, flow through or border upon this state or any portion thereof, and shall include under all circumstances the waters of the United States which are contained within the boundaries of, flow through or border upon this state or any portion thereof. Provided, waste treatment systems, including treatment ponds and lagoons, designed to meet federal and

state requirements other than cooling ponds as defined in the Clean Water Act or rules

promulgated pursuant thereto are not waters of the state.

63.    Pursuant to Title 2 O.S. § 20-48 (A), animal feeding operations licensed pursuant to the

provisions of the Oklahoma Concentrated Animal Feeding Operations Act shall utilize

Best Management Practices, or may substitute for best management practice equivalent

measures contained in a site-specific Animal Waste Management Plan meeting the

conditions and requirements established by subsection C of this section and by rules

promulgated by the Board pursuant to the Oklahoma Concentrated Animal Feeding

Operations Act.

64.    Pursuant to Title 2 O.S. § 20-48 (B)(1), there shall be no discharge of process wastewater

to waters of the state except in accordance with the provisions of the Oklahoma

Concentrated Animal Feeding Operations Act.

65.    Pursuant to Title 2 O.S. § 20-48 (B)(2), animal waste shall be isolated from outside

surface drainage by ditches, dikes, berms, terraces or other such structures except for a

twenty-five-year, twenty-four-hour rainfall event.

66.    Pursuant to Title 2 O.S. § 20-48 (B)(4), animal waste handling, treatment, management

and removal shall: (a) not create an environmental or a public health hazard, (b) not result

in the contamination of public or private drinking water supplies, (c) conform with

Oklahoma Water Quality Standards, (f) ensure that watersheds and groundwater are

adequately protected.

67.    Pursuant to Title 2 O.S. § 20-48 (C)(4)(a)(1), land application of animal waste shall not

exceed the nitrogen uptake of the crop coverage or planned crop planting with any land

application of wastewater or manure.

68.  Pursuant to Title 2 O.S. § 20-48 (C)(4) (b), land application practices shall be managed so as to reduce or minimize: (1) the discharge of process water or animal waste to waters of the state, (2) contamination of waters of the state, and (3) odor.

69.  Pursuant to Title 2 O.S. § 2 0-48 (C)(4)(c), facilities including waste retention structures, waste storage sites, ponds, pipes, ditches, pumps, and diversion and irrigation equipment shall be maintained to ensure ability to fully comply with the terms of the Oklahoma Concentrated Animal Feeding Operations Act.

70.  Pursuant to Title 2 O.S. § 20-48 (F), every animal feeding operation licensed pursuant to the provisions of Oklahoma Concentrated Animal Feeding Operations Act shall develop a plan approved by the Department for the disposal of carcasses associated with normal mortality.

71.  Pursuant to Title 2 O.S. § 20-50 (A), any hydrologic connection between wastewater and waters of the state outside that authorized by the provisions of the Oklahoma Concentrated Animal Feeding Operations Act shall constitute a discharge to waters of the State.

## V.  GENERAL ALLEGATIONS

72.  Defendant is an egg production company, in business since approximately 1930, with four currently operating farms located in Texas and Oklahoma. Defendant's various facilities include pullet houses, where chicks are hatched, and layer facilities, where eggs are produced, washed, and packaged.

73.  In addition to the facilities associated with egg production, Defendant owns property at

each facility at issue in this Complaint that is planted with Bermuda grass, hay, or crops, such as corn, wheat, and sorghum.

74.    At most of its facilities, until approximately 2008, Defendant followed a practice of land-applying most or all of the manure and process wastewater generated at the facilities on-site, to the surrounding fields.

75.    Each of the Facilities at issue in this Complaint qualifies, or qualified at a time relevant to this Complaint, as a "concentrated animal feeding operation" as that term is defined in Section 502(14) of the Act, 33 U.S.C. § 1362(14) and 40 C.F.R. § 122.23(b)(2).

76.    Defendant applied for and obtained coverage under the Texas General CAFO Permit at each of the Texas Facilities, except the Prosper Facility.

77.    Defendant applied for and obtained coverage under the EPA General CAFO Permit for each of the Oklahoma Facilities.

78.    Defendant applied for and was issued an Oklahoma Concentrated Animal Feeding Operations Act license for each of the Oklahoma Facilities and at all relevant times, has been licensed pursuant to the provisions of the Oklahoma Concentrated Animal Feeding Operations Act.

79.    Based on inspections conducted by the Plaintiffs at Defendant's Facilities, dating back to 2006, Plaintiffs observed a pattern of failures by Defendant to comply with the requirements of the applicable CAFO permits and licenses at each of the Facilities for which Defendant had permit coverage.

80.    Defendant's operations generated manure at each of the Facilities and Defendant land-applied that manure, on site, often at greater than agronomic rates.  This manure contains

16

both nitrogen and phosphorus.  This manure, when land-applied at greater than agronomic rates, is an "agricultural waste," which is a "pollutant" within the meaning of 33 U.S.C. § 1362(6) and Tex. Water Code § 26.001(13).

81.     Upon information and belief, as a result of Defendant's historic land application practices, during and after rain events, Defendant discharged storm water runoff containing pollutants from each of its Facilities into "navigable waters," within the meaning of section 502(7) of the Act, 33 U.S.C. § 1362(7), or into waters of the State, within the meaning of Tex. Water Code §§ 26.001(5) and 26.121 Oklahoma law pursuant to Title 2 O.S. §20-41(B)(25).

**A.      Discharges without a Permit at the Prosper Facility**

82.     Effective July 27, 1999, the State of Texas required all existing CAFOs, which were authorized by EPA under federal law prior to July 27, 1999, to apply within 60 days for authorization to discharge under the newly promulgated state NPDES regulations. 30 Tex. Admin. Code § 321.33, 24 Tex. Reg. 5721 (July 23, 1999).

83.     At all times relevant herein, the Prosper Facility has qualified as a "concentrated animal feeding operation" as that term is defined in 30 Tex. Admin. Code § 321.32, in Section 502(14) of the Act, 33 U.S.C. § 1362(14), and 40 C.F.R. § 122.23(b)(2).

84.     Defendant did not apply to the State of Texas for CAFO permit authorization for the Prosper Facility within 60 days of July 27, 1999 as required, and thereafter failed to do so until November 14, 2009.

85.     Upon information and belief, during and after significant rain events at the Prosper Facility, Defendant has discharged pollutants to waters of the United States without

permit authorization, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a),

and discharged pollutants and agricultural waste into water in the State in violation of

Tex. Water Code  §26.121(a, c-e) and the regulations promulgated thereunder.

**B.**     **Construction Stormwater Violations at the Vernon-Chillicothe Facility**

86.     Prior to February, 2007, Defendant obtained coverage under the TXCGP for a

construction project involving the planned construction of as many as 17 laying hen

houses, a processing plant, and a feed mill, with an estimated 15.9 acres being disturbed.

87.     As of October, 2010, Defendant had completed construction of eight dry litter

commercial laying hen houses, a feed mill, and a processing plant.

88.     Defendant met the definition of "operator" under 40 C.F.R. § 122.2, 30 Tex. Admin.

Code § 321.32(38) and the TXCGP, and was therefore required to obtain NPDES permit

coverage for the construction activities and comply with all requirements and conditions

for operation under the Act, its regulations, and Texas law.  *See* Section 402 of the Act,

33 U.S.C. § 1342; 40 C.F.R. § 122.21(b); and 30 Tex. Admin. Code § 321.33.

89.     Upon information and belief, based on repeated inspections of the Vernon-Chillicothe

Facility by the TCEQ, Defendant failed to comply with the terms and conditions of the

TXCGP at the Vernon-Chillicothe Facility.

**C.**     **Texas Solid Waste Disposal Act Violations at the Prosper Facility**

90.     Based on investigations conducted by TCEQ investigators at the Prosper Facility from

2006 through 2009, Defendant transported chicken carcasses from Oklahoma and added

them to compost piles in Texas without obtaining authorization from TCEQ.

91.      Upon information and belief, in doing so, Defendant failed to comply with the

notification requirements set forth in Tex. Admin. Code ch. 332, subch. B, the general

requirements found in Section 332.4 of that title, and the air quality requirements found

in Section 332.8 of that title, all in violation of 30 Tex. Admin. Code § 332.3(c).

**D.**   **Public Water Supply Violations at the Prosper Facility**

92.     In or around March 2007, TCEQ investigators determined that Defendant employed

approximately 60 employees at the Prosper Facility at any given time.

93.     On information and belief, Defendant met the definition of public water system from

about March 2007 through June 2009.

94.     On information and belief, based on repeated inspections by the TCEQ, Defendant

operated a public drinking water supply system at the Prosper Facility without complying

with the requirements of 30 Tex. Admin. Code ch. 290, subch. D, governing public water

supplies, in violation of 30 Tex. Admin. Code § 290.39.

**E.**   **Public Water Supply Violations at the Vernon-Chillicothe Facility**

95.     On or about February 2007, TCEQ investigators determined Defendant employed

approximately 41 employees at the Vernon-Chillicothe Facility at any given time.

96.     On information and belief, Defendant has met the definition of public water system since

approximately February, 2007.

97.     On information and belief, based on repeated inspections by the TCEQ, Defendant

operated a public drinking water supply system at the Vernon-Chillicothe Facility

without complying with the requirements of 30 Tex. Admin. Code ch. 290, subch. D,

governing public water supplies, in violation of 30 Tex. Admin. Code § 290.39.

F.      **Violations of the Oklahoma Poultry Waste Applicators Certification Act**

98.     In or around 2007, ODAFF determined by reviewing soil tests and application records
        that the certified poultry waste applicator for the Mahard facilities land applied poultry
        waste at a rate that exceeded the most recently published United States Department of
        Agriculture Natural Resources Conservation Service Waste Utilization standards
        pursuant to 2 O.S. §10-9.19(2).

99.     In 2009, ODAFF determined that the certified poultry waste applicator for the Mahard
        facilities failed to attend educational courses on poultry waste handling for the 2008
        calendar year pursuant to OAC § 35:17-7-8 (a).

100.    In 2009, ODAFF determined that the certified poultry waste applicator for the Mahard
        facilities failed to submit an annual report regarding all poultry waste land applied at the
        Mahard facilities by such applicator for the period from July 1, 2008 through June 30,
        2009 pursuant to 2 O.S. § 10-9.18.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(CAFO Permit Violations)**

101.    Paragraphs 1 through 100 above are realleged and incorporated herein.

102.    At all relevant times, Defendant had coverage under the Texas General CAFO Permit at
        the Springhill and Vernon-Chillicothe Facilities in Texas and had coverage under the
        EPA General CAFO Permit at the Ravia, Granite Ranch, Nebo Ranch, and Boogie Hill
        Facilities in Oklahoma.

103.    On knowledge, information and belief, Defendant discharged pollutants from the

Facilities into a "navigable water" within the meaning of section 502(7) of the Act, 33 U.S.C. § 1362(7), or into waters of the State, within the meaning of Tex. Water Code §§ 26.001(5) and 26.121, in violation of the applicable permit, or otherwise violated the specific requirements of the applicable permit.

104.    Further, on knowledge, information and belief, Defendant failed to close the retention control structures within one year of ceasing operation at the Springhill Facility, in violation of 30 Tex. Admin. Code § 321.36(m) and the applicable permit.

105.    Unless enjoined, these violations will continue or recur.

106.    Pursuant to Sections 309(b) and (d) of the Act, 33 U.S.C. §§ 1319(b) and (d), Defendant is liable for civil penalties of not more than $32,500 per day for each violation of the CWA occurring after March 15, 2004 through January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009.  *See* 69 Fed. Reg. 7121  (Feb. 13, 2004); 73 Fed. Reg. 75340  (Dec. 11, 2008).

107.    Pursuant to Tex. Water Code §§ 7.101 and 7.102, Defendant is also liable to the State of Texas for civil penalties of not less than $50 nor greater than $25,000 per act and per day of each violation of Chapter 26 of the Texas Water Code.

## SECOND CLAIM FOR RELIEF

### (Discharging Without A Permit at Prosper Facility)

108.    Paragraphs 1 through 100 are realleged and incorporated herein.

109.    Since at least September 25, 1999, Defendant discharged pollutants from the Prosper Facility without an NPDES permit to Doe Branch, which is a "navigable water" within the meaning of section 502(7) of the Act, 33 U.S.C. § 1362(7), in violation of Section

301 of the CWA, 33 U.S.C. § 1311.

110.   Since at least September 25, 1999, Defendant discharged pollutants and agricultural

waste from the Prosper Facility into Doe Branch, which is "water in the state" within the

meaning of Tex. Water Code §§ 26.001(5) and 26.121, without any permit or

authorization from the TCEQ, in violation of Tex. Water Code § 26.121.

111.   Unless enjoined, these violations will continue or recur.

112.   Pursuant to Sections 309(b) and (d) of the Act, 33 U.S.C. §§ 1319(b) and (d), Defendant

is liable for injunctive relief and civil penalties of not more than $32,500 per day for each

violation of the CWA occurring after March 15, 2004 through January 12, 2009, and up

to $37,500 per day for each violation occurring after January 12, 2009.  *See* 69 Fed. Reg.

7121  (Feb. 13, 2004); 73 Fed. Reg. 75340  (Dec. 11, 2008).

113.   Pursuant to Tex. Water Code §§ 7.101 and 7.102, Defendant is also liable to the State of

Texas for civil penalties of not less than $50 nor greater than $25,000 per act and per day

of each violation of Chapter 26 of the Texas Water Code.

114.   Defendant should be enjoined to cease such discharges immediately and prevent such

discharges in the future, as required by Tex. Water Code § 7.105.

## THIRD CLAIM FOR RELIEF

### (Vernon-Chillicothe Facility: Construction Storm Water Violations)

115.   Paragraphs 1 through 100 are realleged and incorporated herein.

116.   At all relevant times, Defendant had coverage under the TXCGP for the Vernon-

Chillicothe Facility, which was issued pursuant to Section 402 of the CWA, 33 U.S.C.

§ 1342 and Tex. Water Code §§ 5.103, 26.027 and 26.040.

117.   At various times between February, 2007 and October, 2010, Defendant violated the terms and conditions of the TXCGP at the Vernon-Chillicothe Facility, which permit was issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342 and under the TCEQ's jurisdiction.

118.   Unless enjoined, these violations may continue or recur at this construction site.

119.   Pursuant to Sections 309(b) and (d) of the Act, 33 U.S.C. §§ 1319(b) and (d), Defendant is liable for civil penalties of not more than $32,500 per day for each violation of the CWA occurring after March 15, 2004 through January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009. *See* 69 Fed. Reg. 7121  (Feb. 13, 2004); 73 Fed. Reg. 75340  (Dec. 11, 2008).

120.   Pursuant to Tex. Water Code §§ 7.101 and 7.102, Defendant is also liable to the State of Texas for civil penalties of not less than $50 nor greater than $25,000 per act and per day of such violations.

121.   Defendant should be enjoined to cease such violations immediately and prevent such violations in the future, as required by Tex. Water Code § 7.105.

## FOURTH CLAIM FOR RELIEF

### (Texas State Law Claims: Solid Waste Disposal Act Violations)

122.   Paragraphs 1 through 100 are realleged and incorporated herein.

123.   By the acts and omissions alleged above, between September 2006 and June 2009, Defendant violated the terms and conditions of Tex. Health & Safety Code ch. 361 and 30 Tex. Admin. Code § 332.3.

124.   A person who causes, suffers, allows, or permits a violation of a statute, rule, order, or

permit relating to Chapter 361 of the Texas Health and Safety Code "shall be assessed for each violation a civil penalty of not less than $50 nor greater than $25,000 for each day of each violation. . . "; and each day of a continuing violation is a separate violation. Tex. Water Code § 7.102.

## FIFTH CLAIM FOR RELIEF

### (Texas State Law Claims: Public Water Supply Violations)

125.    Paragraphs 1 through 100 are realleged and incorporated herein.

126.    From about March 2007 though June 2009, the Prosper Facility met the criteria to be considered a public water system.

127.    By the actions and omissions at the Prosper Facility alleged above, on knowledge, information and belief, at various times between March 2007 through June 2009 Defendant violated the terms and conditions of Chapter 341 of the Texas Health and Safety Code and 30 Tex. Admin. Code ch. 290, subch. D. at the Prosper Facility.

128.    Since approximately February 2007, the Vernon-Chillicothe Facility met the criteria to be considered a public water system.

129.    By the actions and omissions at the Vernon-Chillicothe Facility alleged above, on knowledge, information and belief, at various times between April 2007 through June 2009, Defendant violated the terms and conditions of Chapter 341 of the Texas Health and Safety Code and 30 Tex. Admin. Code ch. 290, subch. D. at the Vernon-Chillicothe Facility.

130.    Unless enjoined, these violations at the Vernon-Chillicothe Facility may continue or recur.

131.   A person who violates Chapter 341, Subchapter C of the Texas Health and Safety Code, or a rule or order adopted under the subchapter, is liable for a penalty of not less than $50 nor more than $1,000 for each violation, and each day of a continuing violation is a separate violation.  Tex. Health & Safety Code § 341.048.

132.   Defendant should be enjoined to cease such violations immediately and prevent such violations in the future, as required by Tex. Health & Safety Code § 341.048 and Tex. Water Code § 7.105.

## SIXTH CLAIM FOR RELIEF

### (Oklahoma State Law Claims)

133.   Paragraphs 1 through 100 are realleged and incorporated herein.

134.   Since at least 1997, Defendant has on numerous occasions violated it's CAFO license, the Oklahoma Concentrated Animal Feeding Operations Act codified at 2 O.S. § 20-40 et. seq. (CAFO Act) and Title 35:17-4-1 (Oklahoma Concentrated Animal Feeding Operations Permanent Rules) at each of the Oklahoma facilities.

135.   Those violations include but are not limited to:

a.  repeated overapplication of poultry waste on land at each of the facilities in violation of the CAFO Act.

b.  violation of 2 O.S. § 2-18.1 by causing pollution to the land and waters of the State since 2004.

c.  failure to properly maintain waste retention structures to prevent discharges of waste at each of the Oklahoma facilities in violation of the CAFO Act.

d.  failure to dispose of dead animals in accordance with an approved carcass disposal

25

plan at each of the Oklahoma facilities as required under the CAFO Act.

    e.  failure to maintain adequate and proper storage for poultry waste.

136.    Since at least 2000, Defendant has on numerous occasions violated the Oklahoma Poultry

Waste Applicators Certification Act and Permanent Rules. These violations include,

a. poultry waste application that exceeded the most recently published United States

Department of Agriculture Natural Resources Conservation Service Waste Utilization

standards.

b.  failure to attend educational courses on poultry waste handling; and,

c.  failure to submit an annual report regarding all poultry waste that was land applied at

the Mahard facilities.

137.    Pursuant to 2 O.S. § 20-62 (A), any person violating the provisions of the Oklahoma

Concentrated Animal Feeding Operations Act or any rule of the Board promulgated

pursuant thereto shall, upon conviction, be deemed guilty of a misdemeanor and upon

conviction thereof may be punished by a fine not exceeding Two Hundred Dollars

($200.00). Pursuant to 2 O.S. § 20-62 (B), any owner or operator who fails to take such

action as may be reasonable and necessary to avoid pollution of any stream, lake, river or

creek, except as otherwise provided by law, or who violates any rule of the Board

adopted to prevent water pollution from animal feeding operations pursuant to this act

shall, upon conviction, be deemed guilty of a misdemeanor, and upon conviction thereof

may be punished by a fine of Five Hundred Dollars ($500.00) to Ten Thousand Dollars

($10,000.00) for each violation, by imprisonment in the county jail for not more than six

(6) months for each violation, or by the assessment of a civil penalty up to Ten Thousand

Dollars ($10,000.00) for each violation or by any of such fine, imprisonment, and civil penalty.

138.    Pursuant to 2 O.S. § 20-62 (C) (1), in addition to the criminal and civil penalties specified by this section, the Oklahoma Department of Agriculture, Food, and Forestry may assess an administrative penalty of not more than Ten Thousand Dollars ($10,000.00) per day of noncompliance, or bring an action for injunctive relief granted by a district court. Pursuant to 2 O.S. § 20-62 (C) (2), a district court may grant injunctive relief to prevent a violation of, or to compel compliance with, any of the provisions of the Oklahoma Concentrated Animal Feeding Operations Act or any rule promulgated thereunder or order, license or permit issued pursuant to the Oklahoma Concentrated Animal Feeding Operations Act.  Pursuant to 2 O.S. § 20-62 (C) (3), nothing in this section shall preclude the ODAFF from seeking penalties in district court in the maximum amount allowed by law. The assessment of penalties in an administrative enforcement proceeding shall not prevent the subsequent assessment by a court of the maximum civil or criminal penalties for violations of the Oklahoma Concentrated Animal Feeding Operations Act.

139.    Pursuant to 2 O.S. §10-9.11(A)(1) any person violating the provisions of the Oklahoma Registered Poultry Feeding Operations Act shall, upon conviction, be guilty of a misdemeanors and may be punished by a fine not to exceed Two Hundred Dollars ($200.00).

140.    Pursuant to 2 O.S.§ 10-9.11(B)(1) in addition to the criminal penalties specified by this section, the State Department of Agriculture may assess an administrative penalty of not more than Two Hundred Dollars ($200.00) per day of noncompliance, or bring an action

for injunctive relief granted by a district court.

141.   Pursuant to 2 O.S. § 20-62, Defendant is liable to the State of Oklahoma for injunctive

relief and civil penalties of not more than $10,000.00 per day for each violation of the

CAFO Act.

142.   Pursuant to 2 O.S. §§10-9.11(A)(1) and 10-9.11(B)(1) Defendant is liable to the State of

Oklahoma for injunctive relief and civil and administrative penalties of not more than

$200.00 per day for each violation of the Oklahoma Registered Poultry Feeding

Operations Act.

## VII.  TEXAS ATTORNEYS' FEES AND COSTS

143.   The State of Texas has incurred attorneys' fees, court costs, and investigative costs in this

proceeding.

144.   The State of Texas asks for recovery of reasonable attorney's fees, court costs, and

reasonable investigative costs from Defendant, as allowed by Tex. Water Code § 7.108.

## VIII.  PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment against the Defendant:

1.   For such injunctive relief as necessary to prevent Defendant Mahard from

discharging pollutants or agricultural waste from each of its Facilities, except as expressly

authorized by the CWA, applicable state law, and the limitations and conditions of the

applicable NPDES Permits.

2.   Ordering Defendant Mahard to comply with the terms of the Act and applicable state

and federal permits and regulations.

3.   Ordering Defendant Mahard to comply with the requirements and/or conditions of

28

any permits, orders, notices, requests, or instructions issued by the States of Oklahoma and Texas regarding the Facilities.

4.     Assessing civil penalties not to exceed $25,000 per day for violations of the CWA that occurred prior to January 30, 1997, and, pursuant to Federal Civil Penalties Inflation Adjustment Act of 1990, the Debt Collection Improvement Act of 1996, and the subsequent Civil Monetary Penalty Inflation Adjustment Rule, 61 Fed. Reg. 69,360 (December 31, 1996), up to $27,500 per day per violation for violations occurring on or after January 30, 1997, but before March 16, 2004, and, pursuant to 69 Fed. Reg. 7121  (Feb. 13, 2004), $32,500 per day for each such violation occurring on or after March 16, 2004 through January 12, 2009, and, pursuant to 73 Fed. Reg. 75340  (Dec. 11, 2008), $37,500 per day for each such violation occurring after January 12, 2009.

5.     Awarding the State of Texas civil penalties of not less than $50 nor more than $25,000 per act and per day of violation of Chapter 26 of the Texas Water Code and the regulations promulgated thereunder, and civil penalties for violations of the Texas Health and Safety Code within the range allowed by statute.

6.     Awarding the State of Oklahoma civil penalties of not more than $10,000.00 per day for each violation of the CAFO Act and civil penalties of not more than $10,000.00 per day for each violation of the Oklahoma Registered Poultry Feeding Operations Act.

7.     Awarding the State of Texas reasonable attorney's fees, court costs, and reasonable investigative costs.

8.     Awarding the United States and the State of Oklahoma the costs of suit herein and such other additional relief as the Court may deem appropriate.

29

Respectfully submitted,

FOR THE UNITED STATES:

Date: 5/17/4

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7415
Washington, DC 20044-7415
(202) 514-2718

Date: 5/17/11

NICOLE VEILLEUX
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 616-8746
(202) 514-8395 (fax)
nicole.veilleux@usdoj.gov

JAMES T. JACKS
UNITED STATES ATTORNEY

LISA R. HASDAY
Assistant United States Attorney
Texas State Bar No. 24075989
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8737
Facsimile: 214.659.8807
Email: Lisa.Hasday@usdoj.gov

30

OF COUNSEL:
JAMES VINCH
Water Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

ELLEN CHANG-VAUGHAN
Office of Regional Counsel, Region 6
United States Environmental Protection Agency

**FOR THE STATE OF TEXAS:**

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

BARBARA B. DEANE
Chief, Environmental Law and Administrative Law Division

DAVID PREISTER
Chief, Environmental Protection Section

KELLIE E. BILLINGS                    Date: 4-25-11
Texas State Bar No. 24042447
Assistant Attorney General

THOMAS H. EDWARDS
Texas State Bar No. 06461800
Assistant Attorney General

Office of the Attorney General
Environmental Protection and
Administrative Law Division
P.O. Box 12548, MC-018
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0052

**FOR STATE OF OKLAHOMA:**

Date: 4-19-11

P. Clayton Eubanks, AAG OBA #16648
Office of the Attorney General
Environmental Protection Unit
313 N.E. 21st Street
Oklahoma City, OK 73105

Date: 4-19-11

Teena G. Gunter
General Counsel
Oklahoma Department of Agriculture, Food, and Forestry
P.O. Box 528804
Oklahoma City, OK 73152-8804

Date: 4/19/11

Jim Reese
President, State Board of Agriculture